**Opinion issued May 13, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-23-00563-CR

———————————————

**RAMON TORRES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1777870**

---

## MEMORANDUM OPINION

Ramon Torres appeals his conviction for aggravated assault of a public servant, for which he received a 45-year sentence. *See* TEX. PENAL CODE § 22.02. On appeal, he claims that he received ineffective assistance of counsel during the punishment phase of trial. He argues that defense counsel's decision to call his

mother to testify opened the door for the State to question him about certain other illegal acts. We affirm.

## Background

The jury found Torres guilty of aggravated assault of a public servant. *See* TEX. PENAL CODE § 22.02. At trial, the jury heard that a Harris County Sherriff's deputy responded to a call of an intruder in a commercial building. When the deputy approached with his gun drawn, Torres opened the door, pointed his pistol at the deputy, and fired the pistol at close range. The deputy fired back. Torres then retreated into the building and hid. He was eventually detained after law enforcement called in a SWAT team and breached the building at three separate entry points. The jury heard that law enforcement employed a helicopter, drones, and robots to locate Torres in the building. The jury also viewed the deputy's body camera video, showing Torres shooting the deputy from point blank range.[1] The jury heard that it was later determined that Torres had climbed into the ceiling of the building, fallen from the ceiling when law enforcement deployed tear gas, and hidden behind a pile of tires where he was found. A loaded gun was found under a pile of ceiling debris on the floor near him.

Torres elected jury sentencing. At the punishment proceedings, the State presented evidence of Torres's criminal history, including convictions for burglary

---

[1]     Neither Torres nor the deputy were seriously injured when they shot each other.

of a habitation, assault of a family member, criminal trespassing, and credit card abuse. The testimony also included that at the time he shot at the sheriff's deputy, Torres was on bond for multiple felony offenses.

The jury heard testimony that Torres had incurred extensive infractions while in jail awaiting trial. These infractions included that he had started a fire, tampered with his cell door by placing a razor blade underneath the lock, helped open cell doors to take control of areas of the jail, possessed a green leafy substance, and possessed a photo with a different offender's name and identification number. He also violated numerous commands and rules.

Finally, the court admitted into evidence recordings of seven calls placed by Torres from jail after the shooting. In these calls, Torres laughed about the offense, claimed the outcome would have been different if he had an assault rifle instead of a pistol, and talked at length about his plan to make money while in jail by selling drug-laced paper. After the State rested, Torres's counsel called Torres's mother to testify.[2] She stated that Torres was greatly affected by the loss of his father, who died when Torres was two years old. She testified that Torres had been diagnosed with severe depression and attention-deficit/hyperactivity disorder (ADHD) as a child. As a result, he started attending therapy and was prescribed medication. She

---

[2] Outside the presence of the jury, Torres's counsel informed the court that his trial strategy included calling Torres to testify. When Torres refused to testify, his attorney called Torres's mother to testify against Torres's wishes.

testified that Torres has a very big heart and is remorseful for shooting the deputy. She testified that he is a good person with a mental health condition and drug addiction. During cross-examination, Torres's mother confirmed that she was aware Torres was trying to sell drug-laced paper from the jail while he was in custody.

During closing arguments, Torres's counsel argued that the jury should consider contributing factors such as the loss of Torres's father, Torres's drug addiction, and his mental health issues. Counsel asked the jury for mercy for Torres and reminded the jury that the minimum sentence was 15 years' imprisonment. In its closing argument, the State countered that the jury could show mercy by not sentencing Torres to life in prison. The State asked the jury to sentence Torres to 60 years, citing his extensive criminal history and lack of remorse. The jury sentenced Torres to 45 years' imprisonment.

## Ineffective Assistance of Counsel

In his sole issue, Torres argues that his attorney rendered ineffective assistance of counsel during punishment by "open[ing] the door to extraneous offense evidence that had not been otherwise introduced during the punishment phase." Specifically, Torres contends that by calling his mother to testify, counsel allowed the State to introduce evidence that while incarcerated pretrial, Torres had asked his mother to send him drug-laced paper. Torres asserts that not only was

4

this evidence not before the jury but that his attorney's decision to call Torres's mother—whom Torres asserts was a witness who had participated in a drug smuggling scheme with him—was so outrageous that no competent attorney would have engaged in it.

## A.    Standard of Review

The United States Constitution and the Texas Constitution guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) counsel's performance was deficient, and (2) a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 694. The defendant bears the burden of proof on both issues, and failure to make either showing by a preponderance of the evidence will defeat an ineffective assistance claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The appellant's "failure to satisfy one prong of the *Strickland* test negates the court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697.

5

In reviewing counsel's performance under *Strickland*'s first prong, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance and was motivated by sound trial strategy. *Strickland*, 466 U.S. at 689. To defeat this presumption, any allegation of ineffectiveness must be firmly founded in the record so that the record affirmatively shows the alleged ineffectiveness. *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). Generally, counsel should be given an opportunity to explain his actions before being found ineffective. *Id.* In most cases, direct appeal is an inadequate vehicle for raising an ineffective-assistance claim because the record is undeveloped and does not adequately reflect the motives behind counsel's actions. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). In the face of a silent record, we cannot know trial counsel's strategy, so we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Under *Strickland*'s second prong, in reviewing whether there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. With respect to claims of

ineffective assistance during the punishment phase, the appellant must show a reasonable probability that the assessment of punishment would have been less severe in the absence of counsel's deficient performance. *Bazan v. State*, 403 S.W.3d 8, 13 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). It is not enough to show that counsel's errors had some conceivable effect on the outcome of the punishment assessed; rather, the likelihood of a different result must be "substantial." *Id.*

**B.   Analysis**

In support of his ineffective assistance claim, Torres argues that his attorney's decision to call Torres's mother to testify "opened the door to extraneous offense evidence that had not been otherwise introduced during the punishment phase." This argument is not supported by the record because the record reflects that evidence of Torres's plan to make money by selling drug-laced paper was already before the jury during the punishment proceeding.

As part of the State's punishment evidence, the court admitted into evidence and the jury heard recordings of phone calls Torres made from jail. During one of those phone calls, Torres talked about his plan to make money in jail by selling drug-laced paper. After the call was published to the jury, Deputy Hayes explained that during the call, Torres was "talking about making money through mail, mailing letters with wasp killer spray, bug spray, on them to the jail so that he

7

could make money." During Torres's mother's testimony as a punishment witness for the defense, she affirmed that she was aware that Torres was trying to sell drug-laced paper from the jail while in custody. The only new information the jury could glean from Torres's mother's testimony was that she was aware of his money-making scheme. Because the information Torres challenges was already in the record at the time his mother testified, Torres cannot establish that his counsel's performance was deficient. Torres has failed to establish the first prong of *Strickland*, that his counsel's performance was deficient. *See Strickland*, 466 U.S. at 688.

Having concluded that Torres has not met his burden to establish that his counsel was deficient, we need not consider whether Torres met his burden to establish the second prong of the *Strickland* test that without the alleged deficiency, there was a reasonable probability that the assessment of punishment would have been less severe. *Bazan*, 403 S.W.3d at 13. We note, however, that the same reasoning that shows Torres was not prejudiced by his attorney's decision to call his mother demonstrates that Torres cannot meet his burden to establish that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. When defense counsel called Torres's mother to testify, the State had already introduced evidence of Torres's plan to sell drug-laced paper in jail. The evidence Torres complains of was already in the record. There is no reasonable probability

8

that but for defense counsel's calling Torres's mother to testify, the assessed punishment would have been less severe.[3] *Bazan*, 403 S.W.3d at 13. Thus, Torres has failed to satisfy the second prong of the *Strickland* test. *See Strickland*, 466 U.S. at 694; *see also Carter v. State*, No. 01-20-00725-CR, 2022 WL 710209, at *2 (Tex. App.—Houston [1st Dist.] Mar. 10, 2022, pet. ref'd) (mem. op., not designated for publication) (holding appellant did not meet second prong of *Strickland* test when counsel introduced harmful evidence that was already before the jury).

Torres has failed to meet his burden to demonstrate ineffective assistance of counsel. We overrule his sole issue.

---

[3] To the extent Torres argues that his mother's testimony resulted in a higher sentence, this is not supported by the record. Torres's mother was the only witness who testified to his traumatic childhood, the impact the loss of his father had on Torres, and his history of mental health and drug addiction issues. This testimony supported defense counsel's closing argument request that the jury show Torres mercy. The jury sentenced Torres to 45 years' imprisonment, though the State requested a 60-year sentence, demonstrating that Torres's mother's testimony may have influenced the jury to assess a sentence lower than the State's recommendation. On this record, we can neither say that defense counsel's decision to call Torres's mother was so outrageous no reasonable attorney would have done so, nor can we say that had counsel not done so, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

9

## Conclusion

We affirm the judgment of the trial court.


Susanna Dokupil
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Do not publish.  TEX. R. APP. P. 47.2(b).